Wright, J.,
delivered the opinion of the Court.
In this case, we are of opinion that the deed of conveyance- from Joseph E. Bell to Benjamin F. Bell, *532 of date the 29th of January, 1849, was made to hinder and delay the complainant in the collection of the judgment, that he might obtain in the suit then pending against Joseph E. Bell, for slander; and that, therefore, it is fraudulent and void.*
The record presents a case where the deed is severely attacked in the bill for fraud, and its consideration called in question. The evidences of the fraud, are a conveyance from father to son, pending an action of slander against the former, in which they both had great feeling, and it is manifest they were both, and especially the father, actively engaged to defeat the collection of the judgment, in the event a recovery should be had. The father, Joseph E. Bell, is shown to have been a physician in a fair practice, and prior to the *533 judgment possessed of a pretty good estate; but pending the suit for slander, he disposes of every thing he has subject to execution; and even when the’ trial is pending, he sells his personal estate to Davis, requiring the money down, and it is manifest that in the sale to Davis, he was anxious to get into his hands the money for the land. He retained possession of the land, notwithstanding the absolute deed to his son; declared he would not pay pomplainant’s judgment, treating it, in his own language, as a snare that hung over him, and that he did not mean to leave any gaps down. Since the recovery of the judgment, he has broken up housekeeping and apparently has no estate subject to execution. When he sold the land to his son, the reason given for it was, that he intended to move to Nash *534 ville; ancl by tbe son, that be intended to live on tbe place; but be never moved to Nashville, nor did tbe son go' to live- on tbe land.. There is no proof made on tbe part of Benjamin E. Bell, of tbe fairness of this deed, nor is any evidence furnished that be ever paid tbe $700 00, tbe alleged price of this land, except a very general statement to that effect in tbe answer. It is not shown that be was able to pay for it; and be appears to have been a young man, attending tbe medical lectures at Louisville.
These facts and circumstances establish for the complainant, prima facie evidence that this deed was fraud-, ulent, and if' they did not, certainly must be held to place it, under great suspicion of fraud, and it was incumbent on Benjamin E. Bell to prove, at least, that be bad actually paid for tbe land. Smart and wife vs. Waterhouse et al., 6 Humph., 158.
*535 It is true, that if Benjamin E. Bell had purchased and taken a conveyance of this land in good faith, and had taken possession of it, evidence of the sayings of his father, after the transaction, ought not to weigh against him. But this is not that case. Here Joseph E. Bell retained possession of the land, in face of the absolute deed, and the two appear to be connected together, in a scheme to defeat complainant in the collection of his judgment. Walter vs. Watson, 6 Humph., 509, 514. Besides, if we reject the acts and declarations of Joseph B. Bell, made after the deed, Benjamin F. Bell is still in the same difficulty.
2. Reeves, in his purchase of this land under the. execution against Davis, acquired no title, Davis only holding it by a title bond, and he has paid nothing. Davis is not an innocent purchaser, because he has taken no con *536 veyance, and for other reasons apparent in the record; and he can have no claim on this land as against complainant.
We reverse the decree of the Chancellor, and decree for complainant. The sale to Reeves will be set aside; and also the purchase by Davis, and he will have a decree, refunding to him any thing he may have paid towards the land, against the parties that received it. The costs of the suit will be paid out of the fund raised by the sale of the land.

Patrick, Adm’r, vs. Ford et al.
* Tho following important case decided at Jackson several terms since,' is now reported for the first time; the opinion having been handed,to the Reporter, while this volume was in press. It was upon a bill filed i Chancery at Memphis, to subject a lot in that city to the payment of a judgment recovered in an action of tort, upon the ground that said lot had been fraudulently conveyed by the defendant ponding said action, to defeat a recovery. The Chancellor decreed for the defendants, from which complainant appealed. It decides :
1. That a conveyance of property to defeat an expected recovery in an action of tort, is fraudulent and void, as well at common law as under the statute of frauds of 1801, ch. 25, § 2.
2. The term a creditor,” as used in the statute of frauds of 1801, ch. 25, § 2, embraces every person having a just demand or right, recognized by law, to claim a recovery for an injury to person or property.
3. A voluntary conveyance is void as to existing creditors, by the statutes of 13 and 27 Eliz.; and equally so by our act of 1801, ch. 25, which, in this respect, adopted the principle of the English statutes.
4. In the construction of a statute, the words used must, if possible, be so understood as ¿o give meaning and effect to every word ; not so much regarding the propriety of language, as the obvious sense in which the words were intended to be understood.
McKinney, J., delivered the opinion of the Court.
The bill seeks to obtain satisfaction of a judgment out of certain real property, alleged to have been fraudulently conveyed by the defendant, *533 Thomas Ford, on a pretended trust for his wife; but really for the purpose of defeating the plaintiff’s recovery.
The facts are, that on the 25th of June, 1849, complainant instituted an action of trespass to et armis, against Thomas Ford, for the recovery of damages for a violent injury to a slave, the property of the estate of complainant’s intestate; and on the trial, in March, 1854, judgment was rendered in his favor for §750 00. On the 12th of October, 1849, during the pendency of said action, Ford made a voluntary conveyance of a lot of ground in South Memphis, to the defendant, Hart, in trust, for the separate use and benefit of Mrs. Ford, wife of the defendant.
The bill charges, that the conveyance was made to defeat the plaintiff’s anticipated recovery in the pending suit. The answer denies the fraudulent intent imputed in the bill; and the case rests upon the fact, that the conveyance was voluntary, unsupported by any valuable consideration; and upon the presumptions naturally arising out of the circumstances of the case.
A voluntary conveyance is void, as to existing creditors, by the statutes of 13 and 27, Eliz.; and equally so by our act of 1801, which, in this respect, adopted the principle of the English statutes.
It is insisted, however, that the bill cannot be maintained, because the complainant, at the time of the conveyance, was not a “creditor,” within the meaning of the act of 1801, ch. 25, sec. 2. And in support of this position, the case of Langford vs. Fly, 7 Humph,, 585, is relied on.
*534 The practical imjDortance of this question requires, perhaps, that the construction of the statute considered in the case of Langford vs. Fly, as respects the moaning of the term “ creditor,” should he further considered.
The statute declares in substance, that every conveyance of lands or goods, made “ to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures,” shall be utterly void.
Now the question is, in what sense is the term “ creditor” to be understood, in this connexion ? Is it to be taken in the limited and technical sense of a person to whom “ a sum of money is due,, by certain and express agreement.” 3 Black. Com., 154. Or, is it to be understood in a more enlarged, and less technical sense, so as to embrace every just demand or right recognized by law, to claim a recovery for an injury to person or property ?
In the construction of a statute, one of the cardinal rules is, that the words used shall, if possible, be so understood, as that meaning and effect shall be given to every word ; not so much regarding the propriety of language, as the obvious sense in which the words were intended to be understood.
If the word “ creditor ” is to be restricted, so as only to include debts eo *535 nomine and in numero, then the word “damages” is rendered inoperative, as it would seem; there being nothing left, upon that construction, for it to act upon.
Damages may arise upon a breach of contract to do, or not to do, a particular act, whether the agreement be written or verbal, where there is no penalty, or liquidation ot the damages .provided by the contract. And in such case, the damages are no more certain, than in the case of a tortious act, resulting in an injury to the person or property of another. Nor is the right of the plaintiff to recover reasonable compensation, placed on any higher ground, or regarded as a more fixed right, in the former case than in the latter. The plaintiff, in each case, has a just, legal claim to a recovery; all that is uncertain, is the amount. And if defeated in realizing his damages, by the fraud of the defendant, the injury is of the same nature, as the loss of a debt by similar means. The cases are surely, alike within the reason and spirit of the act. The term “ creditors,” in the act of 1715, ch. 48, sec. 9, was taken in a much more comprehensive sense than it technically imports, in order to comply with the spirit and policy of the act. Williams vs. Conrad, 11 Humph., 412, 418. In our view, a conveyance made with the intent to defeat a recovery in damages, for a breach of contract, or for a tortious act to person or property, is as much in contravention of the statute, and equally void, as if the purpose of the deed were to defeat the recovery of a debt, in the proper sense of the term.
*536 This construction has the advantage of giving effect to all the words of the act; and of carrying out the obvious intention and policy of the law.
The case of Langford vs. Fly, is not very explicit. The conveyance was held not to be within the act of 1801; yet, it would seem, that it must have been considered as void at common law. And the latter view, we think, is correct. Wo are of opinion, that the conveyance in the present case, is void under the statute, as also upon well established principles of the common law.
It is said in Fermor’s case, 3 Co., 78, a, that “ the common law doth so abhor fraud and covin, that all acts, judicial as well as others ; and which, of themselves, are just and lawful, yet being mixed with fraud and deceit, are in judgment of law, wrongful and unlawful.” And in Co. Litt., 3 b., it is laid down, that all deceitful practices in defrauding, or endeavoring to defraud another of his known right, by means of some artful device, contrary to the plain rules of common honesty, are condemned by the common law. Indeed, the statute of frauds has been repeatedly held to be only declaratory of the common law. Co. Litt., 76 a., 290 b. 3 Term Rep., 646. And Lord Mansfield seemed to think that the statutes of 13 and 27, Eliz., were not necessary; that the principles of the common law are so strong against fraud, in every shape, that they would have attained all the ends proposed by the statutes. 4 Cowp., 434. These general views are sanctioned by numerous American cases, familiar to the profession.
It follows, that the decree must be reversed, and a decree rendered in favor of complainant.